THE METROPOLITAN WASHING MACHINE COMPANY *v.* O. S. MORRIS AND O. E. BUTTERFIELD.

*Guaranty. Statute. Assumpsit. Separate Judgment.*

B. guaranteed all notes given for wringing machines which the plaintiff in New York might thereafter sell to M. B. became jointly interested with M. in the sale of the machines. M. ordered machines and gave two notes therefor. Afterwards in May M. agreed with the plaintiff to take one hundred and eight machines to be forwarded to him in such places and parcels as he might direct. In June following the plaintiff without any further order from M. forwarded the one hundred and eight machines to Brattleboro, and they arrived on the 18th of said month. On that day B. sold out to C. with M.'s consent, and two days after notified the plaintiff thereof by letter, and that he should be responsible for no more machines sold to M. The plaintiff directed his clerk, who was ignorant of the consignment of the one hundred and eight machines to M., to reply to B.'s letter, which he did by saying that when said two notes were paid he could have his guaranty. B. supposed from this he was holden on the two notes only. On the said 18th day of June M. told B. that he did not order said one hundred and eight machines, and that they might remain at Brattleboro under B.'s control until B. found out whether he was holden for them under his guaranty, and if he found he was so holden he might take the machines and return them. July 5th M. took said machines and sent his note in payment, which the plaintiff received, and which he credited to M. to balance a charge for the said machines, but relying upon B.'s guaranty for payment. *Held,* that B. was not liable for the price of the one hundred and eight machines.

The statute does not authorize separate judgments, differing in amount, against each of several defendants, in actions of assumpsit.

THIS was an action of assumpsit, which was referred, and the referee reported the following facts : Edwin L. Bartholomew, travelling agent of the plaintiff, employed to procure persons to canvass territory for the purpose of selling wringing machines manufactured by the plaintiff, on the 5th day of November, 1863, at Brattleboro, concluded an agreement with the defendant, Morris, by the terms of which Morris was appointed to sell machines in the towns of Brattleboro, Dummerston, Newfane, Wilmington, Rockingham and Putney, and in no other territory ; to purchase the machines of the plaintiff at specified prices ; to order them of Browning, general agent of the plaintiff in New York, as he should want ; to return to Browning his notes for the amounts ordered, payable in three months from the time of forwarding the machines, for which they were given ; to advertise, etc. At the same time the defendants, by an instrument signed by them jointly and severally, guaranteed to the plaintiff punctual payment of all book accounts or notes given for machines the plaintiff might from time to time thereafter sell to Morris. Butterfield had knowledge of the terms of the agreement entered into by Morris at the time he executed the guaranty. Morris soon commenced the business contemplated, and Butterfield became jointly interested with him in selling machines.

On the 15th day of May, 1864, Morris was indebted to the plaintiff in the sum of $476.35, the balance due for machines ordered by him up to that time, and made and forwarded to Browning his promissory note for that sum. On the 19th day of May, Bartholomew concluded a further agreement with Morris, by which Morris was appointed to sell machines in the whole of Windham county, upon the same terms as he was before appointed to sell in the towns named. At the same time Morris ordered Browning to forward twelve machines to him at Wilmington, and agreed to take one hundred and eight more, to be forwarded to him at such stations on the Vermont Valley Railroad, in said county, and in such parcels, as he should direct. Bartholomew made a memorandum of Morris' order and agreement and forwarded it to Browning.

On the 31st day of May, Browning forwarded the twelve machines with a bill and note for the amount to Morris, and charged the

amount to Morris on book. Morris received the machines and note, executed the note and returned it to Browning, who credited it to him to balance the charge. This note was for $70.50. On the 11th day of June, without any further order from Morris, Browning forwarded to him at Brattleboro depot the one hundred and eight machines, which amounted to $528.95, and at the same time forwarded to him by mail a letter containing information that the machines had been sent, with a bill and note for the amount. The machines arrived at Brattleboro before the 18th day of June. The 18th day of June, Butterfield became desirous of ending his connection with the business and of being released from further liability upon his guaranty; to this end he took the letter containing the bill and note to Morris and had an interview with him. They both at that time learned from the letter that the one hundred and eight machines had been forwarded to Brattleboro. Morris told Butterfield he had not ordered the machines and agreed that they might remain at Brattleboro under Butterfield's control until Butterfield could ascertain whether he was holden for them upon his guaranty, and that if Butterfield should find he was so holden he might take the machines and return them. On the 20th day of June, Butterfield sold his interest in the business to Albert L. Crozier, with the consent of Morris; Crozier at the same time agreed to see Butterfield clear of all claims the plaintiff might have for machines, and gave him an instrument in writing to that effect. After this arrangement was perfected and on the same day Butterfield wrote to Browning informing him that he had ceased to have connection in that business with Morris on that day, and should be responsible for no more machines ordered by Morris; that Crozier would carry on the business with Morris and be responsible for all claims the plaintiff had against Morris and himself. Browning received this letter by due course of mail, read it, and on the 28th day of June directed one Allen, who was a clerk in his office and who was ignorant of the consignment of the one hundred and eight machines, to reply to it and inquire of Butterfield as to the responsibility of Crozier. Allen replied to it on that day, in Browning's name, and in the reply he informed Butterfield that his letter of June 20th was received; that

the plaintiff held the two notes already mentioned, on which he was responsible ; that when those should be paid he would be entitled to his guaranty if he should call for it.   Butterfield received this letter and from its contents supposed he was holden upon his guaranty for those two notes only.   On the 5th day of July, Morris took the machines and signed and forwarded the note to Browning.   Browning received the note and credited it to Morris to balance a charge of the same amount, made by him, when he forwarded the machines. At the time Browning forwarded the one hundred and eight machines, and at the time he received and credited the note for their amount, he relied upon the guaranty of both the defendants for payment.   On the 25th day of January, 1865, the plaintiff held the guarantee and all the notes.   Browning on that day sent a letter to Butterfield in which the amount due from Morris, including the note for one hundred and eight machines, and not including the notes, subsequently given by Morris, was stated, and Butterfield was informed that having become surety for its punctual payment he was expected to make speedy settlement of it.   Butterfield received this letter by due course of mail, and it was the first notice he received that the plaintiff claimed to hold him responsible for the note of $528.95, dated June 11th.   On the 23d day of February, 1865, Butterfield sent $200. to Browning, with directions to apply it on the note of May 15th.   Browning received the money and after deducting express charges paid by him, applied the balance, $198.90, as directed.   The plaintiffs still hold the guaranty and all the notes.

Butterfield could have secured himself for his liability on his guaranty, including the price of the one hundred and eight machines, when he gave said notice to Browning, but could not when he received notice that the plaintiffs claimed to hold him for said machines.

Other facts were set forth in the report, but need not be stated.

The county court at the September Term, 1866, BARRETT, J., presiding, accepted the referee's report, and rendered judgment on the report of the referee for the plaintiffs for the sum of $369.18, and costs,—to which judgment and decision the plaintiffs excepted.

*Field & Tyler*, for the plaintiffs.

*Flagg & Waterman* and *Charles N. Davenport*, and *John H. Flagg*, for the defendants.

The opinion of the court was delivered by

PECK, J.　The question is whether the defendant, Butterfield, is liable for the price of the one hundred and eight machines which arrived at Brattleboro about the 18th of June, 1864, or just previous to that, and which Morris took on the 5th of July following, and for which Morris, on that day, forwarded his note to the plaintiffs. Butterfield's guaranty to the plaintiffs was, for the "*payment of all book accounts and notes given for clothes-wringers or other articles they may from time to time hereafter sell to O. S. Morris, town of Wilmington, county of Windham, state of Vermont.*"　When Butterfield gave the notice to the plaintiffs, on the 20th day of June, 1864, that his connection with Morris in the business had ceased, and that he should not be responsible for any more wringers ordered by Morris, neither Butterfield nor Morris was liable for the one hundred and eight machines.　They had been sent by the plaintiffs to Brattleboro without authority from either of the defendants.　They lay at Brattleboro at the risk of the plaintiffs, and as their property. Morris had, it is true, agreed a few days before they were sent, that he would take one hundred and eight more machines to be forwarded to him at such stations on the Vermont Valley Railroad in Windham county, and in such parcels, as he should direct.　This was not a *sale* of the one hundred and eight machines ; it was an executory agreement by Morris that he would thereafter purchase that number of machines.　Nor as an executory agreement did it authorize the plaintiffs to forward them.　The agreement contemplated that they were to be sent in parcels from time to time as Morris should thereafter order, at such stations in the county on the Vermont Valley Railroad as he should from time to time order or direct.　Although the construction of the agreement would be that Morris should order them in a reasonable time, yet the plaintiffs had no right to send them and charge Morris with the price, until he should order them. If Morris neglected entirely to order them, the plaintiffs could not

make him liable for the price of them. They could only hold him at most in that event, for damages for his refusal to order them. If the machines had already been accepted at Brattleboro when Butterfield gave the notice, then at that time he would have been liable for them on his guaranty. It is claimed on the part of the plaintiffs, that what transpired on the 18th of June, the day the defendants learned that the machines had been forwarded to Brattleboro, amounted to an acceptance. The referee reports that on that occasion Butterfield, desirous of ending his connection with the business and of being relieved from further liability upon his guaranty, had an interview with Morris, when Morris told Butterfield he had not ordered these machines, and agreed that they might remain at Brattleboro under Butterfield's control until Butterfield could ascertain whether he was holden for them upon his guaranty, and that if Butterfield should find he was so holden, he might take the machines and return them. In this state of things Butterfield, two days after, gives the notice terminating his guaranty, and immediately receives the reply that when he pays the two prior notes, (which two notes did not include the price of the one hundred and eight machines,) he could have his guaranty. It does not appear that Butterfield ever interfered with the machines, or took possession of them; and the understanding between him and Morris that they should remain under the control of Butterfield for the purpose stated, was not an acceptance. The intent and purpose of it was that they should not be accepted. As Butterfield and Morris had neither of them become liable for the machines when Butterfield gave the notice to the plaintiffs, the subsequent acceptance of them by Morris on the 5th of July, did not operate to charge Butterfield; unless it was the duty of Butterfield to have notified the plaintiffs that they had not been accepted when he gave the notice determining his guaranty. If this was a matter peculiarly within the knowledge of the defendants, and the facts such that the plaintiffs were justified in assuming that the machines had been accepted, it would have been the duty of Butterfield to have apprised them to the contrary. But the plaintiffs must be taken to have known that they sent the machines without authority, and it was their business to have known whether they had been accepted,

before they had a right to assume the acceptance of them by the defendants or to rely on the liability of Butterfield upon his guaranty.

The fact that Butterfield soon after he entered into the guaranty became interested with Morris in the business, does not vary the result; as the defendant Butterfield, when he gave the notice, informed the plaintiffs that he had sold out his interest to Crozier. In view of the circumstances under which the one hundred and eight machines had been sent to Brattleboro, Butterfield, when he received the letter of the 28th of June from the plaintiffs informing him of the extent of his liability, had a right to rely on it. He had a right to suppose the plaintiffs understood the matter as it really was, that no liability had attached in reference to these machines. The general agent of the plaintiffs received the notice from Butterfield and directed the clerk to answer it. The fact that the clerk who wrote the reply did not know that the one hundred and eight machines had been sent, was unknown to Butterfield, and can not control the question of his liability. Had the machines been sent in pursuance of an order from the defendants, or either of them, Butterfield would have had reason to suppose the statement in the letter as to the amount of his liability was a mistake, and it would not have estopped the plaintiffs from asserting their whole claim. No liability was incurred for these machines till Morris and Crozier took them on the 5th of July, and then it became a debt against Morris and Crozier, and not against Morris and Butterfield. The plaintiffs having suffered the machines to lie at Brattleboro till the 5th of July, and then to be taken and appropriated by Morris and Crozier, must seek their remedy on them and not on Butterfield.

It is claimed on the part of the plaintiffs that if Butterfield is not liable for the whole debt, a judgment should be rendered against both defendants for the amount of their joint liability and a separate judgment against Morris for the residue, as Morris is liable for the whole debt. At common law in actions on contract the plaintiff must recover against all the defendants or against none of them, and can not recover separate judgments differing in amount against each. The provision of the statute (G. S. p. 272, § 78,) that in such actions, "the plaintiff shall be entitled to judgment against such

defendants as may be defaulted, and against those who shall upon trial be found to be liable, notwithstanding it shall be found upon said trial that all the defendants in said action are not jointly liable," does not warrant separate judgments against the several defendants. The provision in relation to actions of account between partners, (G. S. p. 343, §§ 13 and 14,) authorizing the court to render such judgments, is confined to actions of account between partners, and does not extend to actions of assumpsit.

Judgment affirmed.